**JOSEPH W. MURRAY, ESQ.**
185 Great Neck Road, Suite 461
Great Neck, New York 11021
T: (646) 838-1702
F: (646) 514-4771
E: Joe@Jmurray-law.com



**ADMITTED TO PRACTICE**
New York State
Eastern District of New York
Southern District of New York

JMURRAY-LAW.COM

August 4, 2022

<u>Via: ECF</u>

Honorable Ronnie Abrams
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

> Re: **United States v. Djonibek Rahmankulov, 20 Cr. 653** (RA)
> **Defendant's response to Government's 8/2/2022 letter motion in limine and Attorney Proffer of facts.**

Dear Judge Abrams:

    I write to respond in opposition to the Government's 8/2/2022 letter *motion in limine* ("8/2-MIL") seeking to (1) admit evidence of the alleged obstructive conduct at trial; and (2) that the Court modify the defendant's bail conditions to include home detention with location monitoring and to preclude the defendant from contacting witnesses except through counsel. In light of the existing conference scheduled for 8/4/2022 at 11:00 am, I will not relate all of the facts and evidence, evincing the complete lack of credibility of Witness-1's accusations against my client. Please consider the following.

    I. **<u>Defendant's response to allegations of obstructive behavior alleged by the Government.</u>**

    A. **That "since the defendant Djonibek Rahmankulov's arrest, and while he has been on pretrial release, he instructed a witness ("Witness-1") to lie to law enforcement and sought to intimidate Witness-1 to discourage him from cooperating with law enforcement" (8/2-MIL").**

    Let me begin by first stating that I have the utmost respect for all three Assistant United States Attorneys assigned to this case It has truly been a pleasure working with them throughout this case and I look forward to our trial of this matter. Accordingly, my statements below are not meant to cast any aspersions on the conduct of any of these fine attorneys. Rather, my opposition to the Government's 8/2-MIL is directed at the false and misleading information provided to the Government by Witness-1, in part due to the manner in which the agent's conducted the interview.

Your Honor should know that my client is a very hard working, proud immigrant who loves this country, and is devoted to his wife and children. He has no criminal record and is widely respected in the community. I truly believe that this is a case of actual innocence and we are confident that we will ultimately prevail at trial. As such, I have shared a lot of information about the facts and circumstances of the case with the Government. Just by coincidence, I discovered that a particular federal law enforcement officer who worked on this case is the brother of an NYPD police officer that I worked with during my prior law enforcement service with the NYPD. I have the greatest respect for this officer and although I had not spoken to him in years, I called him to confirm his relationship with the aforementioned federal agent. While it was ethically important for me to share this potential conflict of interest with my client, I also saw it as an opportunity to impress upon my client to trust that he will be treated fairly if we went in for an innocence proffer. My client agreed, and I contacted the Government to set up the proffer. Unfortunately, the Government having worked this and many other similar cases remained convinced that my client was guilty and they have turned down my repeated requests to conduct an innocence proffer. Moreover, when I informed the Government of my client's willingness to be open and honest during our innocence proffer, in part, because of my relationship with the brother of one of the law enforcement officers on this case, they asked me not to contact that agent on my own, which I voluntarily have refrained from doing so.

Your Honor should know that even while I was investigating the facts of this case, the Government routinely advised me that their investigation of my client was also ongoing. Accordingly, I advised my client to provide me with the names and contact information for any potential witnesses and to also let them know that they may be approached by federal officers in the course of their continued investigation, and that ***they should cooperate and be truthful when speaking with any agents.*** My client conveyed this message to Witness-1 when he saw him earlier on in the case. That withstanding, on or about June 1, 2022, my client informed me that he was approached by Witness-1 outside of a school, wherein Witness-1 was in a state of great distress. Witness-1 informed my client that he was interviewed by agents and that he gave them false information.[1]

As a little background, upon information and belief, Witness-1 is a very troubled individual who has drinking and gambling problems, including casino gambling and reckless stock trading on his Robinhood account. Upon information and belief, Witness-1 has also engaged in numerous acts of domestic violence against his wife, causing her to leave the marital home with their two children on more than one occasion.

Upon information and belief, in order to feed his drinking and gambling habits Witness-1 has (unbeknownst to his wife and parents) secretly engaged in illegal credit card fraud activities with someone referred to here as Government Witness-A, that has devastated Witness-1 and his family's finances. On multiple occasions my client has given money to Witness-1 because he couldn't pay the rent, only to find out that Witness-1 gambled the money away instead of paying the rent. Witness-1 is apparently regularly in debt and financial distress. Over the years, Witness-

---

[1] In fact, I recall a telephone conversation with AUSA Vogel at or around this time in which we were discussing our plans for exchanging our witness lists, and I commented jokingly to AUSA Vogel that I believe that we are talking to some of the same witnesses (referring to the conversation that my client just had with Witness-1).

1 has accumulated a debt to my client of approximately $10,000-$15,000, still outstanding, which my client is not hopeful of ever receiving repayment of.

Upon information and belief, Witness-1 has credit card problems as a result of his illegal activities with Government Witness-A, with Bank of America and Capital One. Witness-1 previously advised my client that Government Witness-A directed Witness-1 to open up credit card accounts and to purchase electronics on it and then give the electronics to Government Witness-A. He repeated this in rapid succession and informed my client that Government Witness-A somehow directed payments (apparently by fraud) to be made on Witness-1's credit card accounts while they were maxed out and then he repeated this over and over, until the money was eventually charged back to Witness-1's account causing him financial ruin. When Witness-1 initially complained about this to my client, my client confronted Government Witness-A as to why he did this to Witness-1 and Government Witness-A essentially blew him off.

On one occasion, my client went to the Resorts World Casino with a group of people including Witness-1. Over the course of the evening there, my client won three big slot machine tickets approximately $4,000 in total. My client, proceeded to the cashier line to cash in the tickets (tickets over $600 must be redeemed at the cashier). My client saw an extremely long line for the cashier but noticed that Witness-1 was near the front waiting to redeem his tickets, so my client gave his tickets to Witness-1 to cash, so my client wouldn't have to wait in line.  When Witness-1 got to the front of the line the cashier confiscated the funds from all the tickets and Witness-1 reacted violently. My client approached the cashier and she explained that she couldn't give them the funds because there was a government seizure of the money (apparently under Witness-1's name). We respectfully request that the Government obtain these records.

Turning back to the Agents' interview of Witness-1, upon information and belief, Witness-1 informed my client that the agents interviewed him in front of his wife and parents.[2] Witness-1 indicated that he intentionally lied to the agents, including, but not limited to that he denied having a Citibank account; he denied that he received a check from my client; when he was asked what his social security number was he said that he didn't know; and when asked how he cashed checks, he again replied that he didn't know. Upon information and belief, he denied this information because he was interviewed in front of his wife and parents and did not want to reveal these financial matters to them. No doubt that these law enforcement officers detected the lack of candor of Witness-1's answers. Upon information and belief, this is also why Witness-1 reached out to my client when he ran into him in the neighborhood. It also logically follows that this is also apparently why Witness-1 decided to win favor with the government by placing blame for his false statements to the agents upon my client.

My client did not instruct Witness-1 to lie to law enforcement. To the contrary, pursuant to my instructions my client told witnesses to cooperate and be truthful. These allegations are obviously and understandably false. We are all intelligent logically thinking professionals who can look at this objectively as being false. As to the numerous allegations of criminal activity

---

[2] While I certainly understand that law enforcement cannot compel someone to consent to be interviewed in private, it is obviously not an optimum situation for a witness to be truthful when interviewed in the presence of their wife and parents, especially someone in Witness-1's family and financial situation.

against my client, we flatly deny all of them and we look forward to exposing all of these lies at trial. As I stated above, I will not relate all of the facts and evidence, evincing the complete lack of credibility of Witness-1's accusations against my client. The proper forum should be during an innocence proffer or at trial.

## II. The Government's application to admit these statements in evidence at trial.

Defendant objects to the admission of obvious perjurious testimony at trial. Again, we have repeatedly requested an innocence proffer with the Government, upon which I am extremely confident that the Government will be more than satisfied with the veracity of my client's statements. Upon doing so, the Government would be ethically prohibited from offering this false testimony. Should the Government continue to refuse to facilitate an innocence proffer resulting in what I would interpret as a willful blindness of Witness-1's false statements, we welcome the opportunity to expose his false statements at trial in front of the jury.

## II. The Court should deny the Government's request to modify the bail conditions

As stated above, my client has no criminal record and he enjoys the presumption of innocence under the law, especially against the false allegations offered by an admitted liar who was unfortunately interviewed by the Government under less than optimum circumstances. Again, law enforcement officers have to maintain a delicate balance when seeking a voluntary statement from a witness by first obtaining consent for the interview, while at the same time trying to conduct the interview under the most optimum circumstances to ensure the veracity of the statements given. If you push too hard to isolate the witness, they may terminate their consent for the interview. If you do not properly create privacy for the interview you risk the witness providing false statements in order to maintain an appearance in front of his loved ones, as obviously happened here. Moreover, when you interview a man with drinking, gambling and financial problems in front of his estranged wife and parents, is it not obvious that the witness will look at this as a Hobson's Choice in which he will say whatever will preserve his family.

## III. Conclusion

For all of the above reasons, the Government's supplemental motion *in limine* should be denied in all respects.

Respectfully,

Joseph W. Murray, Esq.

Cc: to all parties via ECF