**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 28, 2023

**BY ECF**
The Honorable Ronnie Abrams
Southern District of New York
40 Foley Square
New York, New York 10007

**Re: *United States v. Djonibek Rahmankulov*, 20 Cr. 653 (RA)**

Dear Judge Abrams:

The Government submits this opposition to the defendant's motion for bail pending appeal. The defendant's motion is groundless, and the Court should deny it.

**A. Offense Conduct**

As the Court knows from presiding over the defendant's trial, the evidence established that from late 2017 to September 2020, the defendant was a key orchestrator of a money laundering network based in New York City. The defendant, working with others, laundered the proceeds of computer hacking, healthcare fraud, and fraudulent SBA loans. (PSR ¶¶ 15, 50). He also used this network to operate an unlicensed money transmitting business that transferred funds outside of the regulated financial system, in exchange for a fee, primarily between the United States and Uzbekistan and Iran. (PSR ¶ 51). To conduct the money laundering and operate the unlicensed money transmitting business, the defendant opened multiple business bank accounts for sham companies. (*Id.*). The defendant lied to banks repeatedly about the nature of his purported businesses and the financial transactions he was executing. (*Id.*). Moreover, while on Pretrial release, the defendant committed witness tampering, by contacting prospective Government witness "CW-1" and instructing that witness to lie to the FBI. (PSR ¶ 64). When he later learned that CW-1 would cooperate with the Government, the defendant threatened CW-1, stating that if he went to prison, "I will drag all of you with me, and once you are there, then I will have my revenge." (Tr. 510). The defendant also threatened to blackmail CW-1 by saying bad things about CW-1 and disclosing CW-1's "secrets" to CW-1's parents. (*Id.*).

**B. Procedural Background**

The defendant was arrested on a complaint in September 2020, and ordered bailed. He was later indicted on charges of conspiracy to operate an unlicensed money transmitting business, conspiracy to commit money laundering, and bank fraud.

On June 2, 2022, the Grand Jury returned the S4 Superseding Indictment (the "Indictment"). (Dkt. No. 133). The Indictment charged the defendant with: conspiracy to operate an unlicensed money transmitting business, in violation of Title 18, United States Code, Sections 371 and 1960 (Count One); conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h) (Count Two); and bank fraud, in violation of Title 18, United States Code, Sections 1344 and 2 (Count Four). With respect to the charge of conspiracy to commit money laundering, the Indictment charged that the conspiracy had two objects, namely to conduct financial transactions designed to conceal the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), and to transfer funds that were the proceeds of specified unlawful activity between the United States and a foreign country to conceal the proceeds of that unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i). The defendant proceeded to trial in August 2022.

Prior to trial, both parties submitted proposed jury instructions. (Dkt. Nos. 151; 162). With respect to the money laundering conspiracy charge, the Government's proposed instruction stated that the jury must "all agree on the specific object that the defendant agreed to try to accomplish." (Dkt. No. 151, at 28). With respect to the bank fraud charge, the Government's proposed instruction included that the first element of bank fraud would be satisfied if the jury found that the defendant engaged in a "scheme to defraud a bank … or a scheme to obtain money owned by or under the custody of a bank … by means of false or fraudulent pretenses, representations, or promises. (Dkt. No. 151 at 46). The defendant's proposed jury instructions differed from the Government's requests in certain respects but, in connection with the elements of the money laundering and bank fraud charges, the defendant requested that the Court use the same "substantive charge requests proposed by the Government." (Dkt. No. 162 at 29).

On August 30, 2022, while trial was underway, the Court circulated the proposed jury charge, via email, to the parties on August 30, 2022. (Exhibit A). That proposed charge included the following language with respect to the need for the Government to prove that the defendant agreed with a co-conspirator on the object of the conspiracy to commit money laundering:

> The government need not prove that the defendant agreed to accomplish both of these two objects in order to convict the defendant of the conspiracy to commit money laundering charged in Count Two. Nor must you find that either of these two objects was actually accomplished. An agreement to accomplish either of the two objects is sufficient. However, you must all agree on which specific object it was that the defendant agreed to try to accomplish.

(Exhibit A, at 33). The proposed charge on the elements of bank fraud included that the first element of bank fraud is that "there was a scheme or artifice to defraud a bank **or** a scheme to obtain money owned by or under the custody or control of a bank by means of materially false or fraudulent pretenses, representations, or promises." (*Id.* at 42) (emphasis in original).

The following day, the parties discussed the charge. (Tr. 1070). Defense counsel noted that it would be appropriate to charge the jury regarding "Particular Investigative Techniques," which the Court agreed to. (*Id.* at 1070–71). After addressing that issue, the Court asked defense

counsel "Any other objections, questions about the charge, Mr. Murray?"; defense counsel responded "I didn't see anything." (*Id.* at 1072).

After summations, the Court charged the jury the same day. Consistent with the proposed charge, the Court instructed the jury as follows with respect to the conspiracy to commit money laundering:

> The government need not prove that the defendant agreed to accomplish both of these two objects in order to convict the defendant of the conspiracy to commit money laundering charged in Count Two. Nor must you find that either of the two objects is sufficient. However, you must agree on which specific object it was that the defendant agreed to try to accomplish.

(*Id.* at 1274). In charging the jury on the elements of bank fraud, and as consistent with the proposed charge, the Court stated that the first element of bank fraud is that "there was a scheme or artifice to defraud a bank or a scheme to obtain money owned by or under the custody or control of a bank by means of materially false or fraudulent pretenses, representations, or promises." (*Id.* at 1295). At no point did the defendant object to the Court's instructions.

On September 1, 2022, the jury returned a verdict of guilty, on all counts. The Government argued for remand, pursuant to 18 U.S.C. § 3143. (Dkt. No. 209 at 1330). After considering the parties' arguments, the Court remanded the defendant, holding that there was not clear and convincing evidence to rebut the presumption that defendant would not flee or pose a danger to the safety of others. (*Id.* at 1346–48). The Court instead found "that the defendant poses a risk of flight and, albeit, to a significant lesser extent, a risk of danger [to] others." (*Id.* at 1346). The Court stated that the defendant was a flight risk based on the fact that he is not a U.S. citizen; has strong ties to Uzbekistan and had sent large sums of money there; faced a lengthy sentence of over 10 years; and had been convicted of crimes of dishonesty. (*Id.* at 1347). The Court also found that the defendant posed some risk of danger, because of his attempts at witness tampering and threats of retaliation. (*Id.* at 1347–48).

The Court sentenced the defendant on March 17, 2023. In advance of sentencing, the defendant submitted false material to Probation, including that from 2017 to the time of his arrest, he operated a company called EZ Seven Wholesale as a wholesaler in electronics, gold, diamonds, and watches. (PSR ¶ 129). The evidence at trial showed instead that this company was simply a shell whose bank accounts were used entirely for the purpose of laundering crime proceeds. Similarly, the defendant submitted several letters to the Court in support of a more lenient sentence. The Government established that at least two of those letters were filed on behalf of individuals who do not know the defendant and were false.

At sentencing, the Court computed the applicable Guidelines range as 210 to 262 months'. (Dkt. No. 237 at 10–11). The Court imposed a sentence of 121 months', based on the Section 3553(a) factors, and highlighting among other things the defendant's lack of respect for the Court or U.S. law, his series of lies, his "outrageous" "attempt to deceive" the Court by filing false sentencing letters, his lack of remorse, and need for deterrence. (*Id.* at 32–35).

### C. Instant Motion

After the defendant's sentencing and the Court issued its judgment, the defendant filed a notice of appeal. (Dkt. No. 239). On April 6, 2023, his trial counsel applied for admission to the Second Circuit on his behalf. *United States v. Rasulov*, et al., 23-6321 (2d Cir.). On April 7, 2023, the defendant filed the instant motion *pro se*; on April 17, 2023, he filed a habeas petition under 28 U.S.C. § 2255 (Dkt. No. 245). After the filing of the habeas petition, the defendant's counsel filed a motion to withdraw before the Second Circuit. (23-6321, Dkt. No. 10), which the Second Circuit granted on April 18, 2023.

### D. The Court Should Deny the Defendant's Motion for Bail Pending Appeal

#### 1. Applicable Law

Pursuant to 18 U.S.C. § 3143(b)(1), the Court "shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained," unless the Court finds first, "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community," <u>and</u> second, "that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in— (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1)(A)-(B).

A "substantial question" is a "'close question or one that very well could be decided the other way.'" *United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985) (citations omitted). Even where a question raised on appeal is "substantial," the court "must then consider whether that question is so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial." *Id.* (citations omitted). The defendant has the burden of persuasion to demonstrate that all of these requirements are met. *Id.*

With respect to jury instructions, "[w]hen a defendant asks for the instruction that he or she later challenges as erroneous, the 'invited error' doctrine bars the defendant from challenging that instruction on appeal." *United States v. Klein*, 216 F. App'x 84, 90 (2d Cir. 2007). And "[g]enerally speaking, if a defendant did not object to the instruction, a plain error standard of review applies." *United States v. Prado*, 815 F.3d 93, 100 (2d Cir. 2016). An appellate court can "correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. 258, 262 (2010) (alterations and internal quotation marks omitted).

**2. Discussion**

The defendant's motion should be denied for three independent reasons. First, the Court has already found that the defendant is a flight risk and a risk of danger to the community, and the defendant's motion offers no basis to disturb that finding. Second, the defendant does not challenge his conviction on Count One of the Indictment, and the Court imposed a 60-month sentence on that count. Thus, the defendant's appeal is not likely to result in a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process. Third, even if the Court were to consider the defendant's challenges to his convictions on Counts Two and Three for purposes of this bail motion, the defendant does not raise a substantial question of law that is likely to result in reversal or a new trial on those counts.

*a. The Defendant Has Not Shown That He is Not Likely to Flee or Pose a Danger.*

First, after the jury's verdict, the Court found that the defendant cannot make the threshold showing that there is clear and convincing evidence that he is not a flight risk or a danger to the community. 18 U.S.C. § 3143(b)(1)(A). Indeed, the Court found precisely the opposite, "that the defendant poses a risk of flight and, albeit, to a significant lesser extent, a risk of danger others." (Dkt. No. 209 at 1346). Nothing has changed since September 1, 2022; if anything, there is more indication that the defendant is a risk of flight and of danger. The defendant has now been sentenced to a lengthy and well-deserved sentence in excess of ten years, which means he is even more likely to flee than before he knew his fate. *See, e.g., United States v. Scali*, 738 F. App'x 32, 33 (2d Cir. 2018) ("The court reasonably determined that Scali's Guidelines range of 87-108 months' imprisonment was significant enough to provide an incentive to flee."). The defendant has also engaged in additional obstructive conduct, brazenly submitting false information, including fake letters of support, to this Court to try to argue for a lesser sentence. *Cf. id.* (noting that a defendant's perjury conviction "makes it difficult to trust his promise that he will not flee"). There is simply no basis to grant the defendant bail on the Section 3143 factors.

In his motion, the defendant does not introduce any new evidence that would warrant revisiting the Court's findings, much less anything that rises to the level of clear and convincing evidence. Rather, he simply asserts that he does not pose a risk of flight or a danger, and he references his bail history. However, the Court has already recognized that the circumstances have changed now that a jury has convicted the defendant and that the defendant does pose a flight risk and a risk of danger, and the standard for bail following conviction is different than the standard for bail pending trial. *United States v. Madoff*, 316 F. App'x 58, 59 (2d Cir. 2009) ("Post-conviction, a defendant no longer has a substantive constitutional right to bail pending sentencing.").

*b. The Defendant's Motion Would Not Reduce His Prison Time Below the Expected Duration of the Appeal Process.*

Second, the defendant's motion for bail should be denied because he does not challenge his conviction on Count One of the Indictment, conspiracy to commit unlicensed money transmitting, and the Court sentenced him to 60 months' imprisonment on that count. Thus, even if the defendant's other claims were meritorious, there is no likelihood that these claims would

reduce his sentence below the period of time served plus the expected duration of the appeal process. *See United States v. Howe*, 2005 WL 233826, at *1 (D. Conn. Jan. 25, 2005) (denying motion for bail pending appeal even while acknowledging that appeal was not for the purpose of delay and raised a substantial question of law, because the "decision on the appeal was not likely to result in a reduced sentence to a term of imprisonment less than the time already served plus the expected duration of the appeal process").

*c. The Defendant's Challenges to His Convictions on Counts Two and Three Do Not Raise a Substantial Question of Law.*

Third, the defendant has not raised a "substantial question" of law likely to result in reversal even as to Counts Two and Three. As noted above, the defendant's counsel affirmatively requested the very language in the jury instructions to which the defendant now objects. That places this case in the realm of "invited error" challenges that are barred on appeal. Moreover, the defendant does not identify any actual error in these instructions or any prejudice that resulted from the claimed errors.

With respect to the money laundering conspiracy charge, the defendant complains that the Court's instruction that the jury "must agree on which specific object it was that the defendant agreed to try to accomplish" improperly allowed the jury to convict based on a "conspiracy to attempt a substantive crime," which "is not a recognized form of liability." (Motion at 3, citing *United States v. Eldridge*, 2 F.4th 27, 38 & n.14 (2d Cir. 2021)). The defendant's argument is mistaken. The Court was merely instructing the jury that it needed to come to a unanimous verdict on the applicable object of the conspiracy. The Second Circuit has specifically approved precisely this language in a jury charge. *See United States v. Helmsley*, 941 F.2d 71, 91 (2d Cir. 1991) (affirming conspiracy conviction on conspiracy count with multiple objects where court instructed the jury "*you must all agree on the specific object the defendant agreed to try to accomplish*.") (emphasis in original). The defendant himself requested this language in his request to charge, which agreed with the Government's proposed language on this count. Thus, there is no error as to this jury charge, and if there were error, it would have been invited error. *Klein*, 216 F. App'x at 90 ("[a]s the district court's charge echoed the defense's request in only slightly different language, the invited error doctrine bars [the defendant] from challenging this instruction.").

The defendant's argument that the Court's instructions on the bank fraud charge constructively amended the Indictment are likewise meritless for several reasons. First, there was no constructive amendment from the charges in the Indictment in this case. The defendant argues that the Court charged the jury on the counts of 18 U.S.C. § 1344(1), while the "charged offense" was a violation of 18 U.S.C. § 1344(2). But in fact, the Court charged the jury on the elements of both 18 U.S.C. § 1344(1) and 1344(2), *see* Tr. 1297-98, which was in accordance with the Indictment's general identification of 18 U.S.C. § 1344 as the charged offense. (Indictment at 7).

To be sure, the Indictment alleges that the defendant engaged in a "scheme or artifice obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, a financial institution," which tracks the language of Section 1344(2), and the Indictment does not include language that tracks the statutory language found in Section 1344(1) about a "scheme to defraud." (Indictment at 6-7). However, the Indictment's description of the

alleged bank fraud scheme was entirely consistent with the nature of the scheme that was proven and argued at trial, namely, that the defendant "made, and aided and abetted the making of, material misrepresentations to a federally insured financial institution and others in order to deceive that financial institution into allowing companies operated by Rahmnankulov to operate and process financial transactions through the institution." (Indictment at 6-7; *see, e.g.,* Tr. 1169-71 (Government's closing argument discussing the defendant's false statements to banks to induce them to process financial transactions for his companies)). An indictment has not been constructively amended where the allegations in the indictment and the proof at trial both relate to a "single set of discrete facts," or form "part of a single course of conduct" with the same "ultimate purpose." *United States v. D'Amelio,* 683 F.3d 412, 419-21 (2d Cir. 2012).

Because the Indictment gave the defendant full notice of the "core of criminality" that was proven at trial, his argument that there was a constructive amendment fails. *See D'Amelio*, 683 F.3d at 417; *United States v. Banki*, 685 F.3d 99, 118 (2d Cir. 2012) (holding that "one constant in our case law is that we have consistently permitted significant flexibility in proof, provided that the defendant was given notice of the core of criminality to be proven at trial") (quotations omitted); *United States v. Ford*, 435 F.3d 204, 216 (2d Cir. 2006) ("If the defendant was given adequate notice of that core and no substantial prejudice is shown, a challenged instruction will be deemed at most a harmless variance."). That legal principle applies with particular force here, given that the defendant's claim of constructive amendment is based on the inclusion of Section 1344(1) to the jury instructions. But the only actual effect of including Section 1344(1) in the jury instructions would have been to *increase* the burden of proof on the Government beyond what was needed to prove the crime on a Section 1344(2) theory. While Subsection (1) requires an intent "to defraud a financial institution," 18 U.S.C. § 1344(1), Subsection (2) requires only an "intent to acquire bank property." *Loughrin v. United States*, 573 U.S. 351, 363 n.6 (2014); *see also United States v. Lebedev*, 932 F.3d 40, 49 (2d Cir. 2019) (affirming bank fraud conviction under § 1344(2) where there was sufficient evidence that the defendant acted "with the intent to obtain funds under th[e] [financial] institutions' custody and control"). The defendant had full notice of the nature of the crime with which he was charged, and any variance in the inclusion of the language of Section 1344(1) in the jury instructions was plainly harmless. *Ford*, 435 F.3d at 216.

At bottom, the substance of the defendant's claim is that the Court's instructions regarding bank fraud were erroneous in that they provided an alternate ground for conviction—that the jury could convict if it found that the defendant engaged in a "scheme to defraud" a bank—that was not specifically alleged in the Indictment. However, a challenge to a jury instruction on the ground that it provided alternative theories of conviction, one of which is invalid, is also subject to harmless error review. *Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008) (per curiam) (when jury is instructed on multiple theories of liability, one of which is defective, a court must ascertain whether a flawed instruction had a "substantial and injurious effect in determining the jury's verdict"); *United States v. Ferguson*, 676 F.3d 260, 276-77 (2d Cir. 2011) (applying *Hedgpeth* to hold that a jury verdict may not be reversed if "either: (1) the jury would have necessarily found the causation element satisfied beyond a reasonable doubt even with a proper instruction; or (2) the jury would have necessarily found the defendants guilty on one of the properly instructed theories of liability"). Here, even if the defendant were correct that it was error to instruct the jury on the alternative Section 1344(1) theory of bank fraud, he does not even attempt to argue that he was prejudiced by this instruction. Any such argument would be patently meritless, as the evidence

overwhelmingly showed that the defendant made material misrepresentations to obtain money in the custody of multiple banks by inducing them to process various transactions over the course of the scheme. Thus, the record establishes that the jury would have convicted even if only instructed on the language of Section 1344(2). *See, e.g., United States v. Atilla*, 966 F.3d 118, 126-27 (2d Cir. 2020) (instructional error harmless where there was "little doubt" that jury found defendant "guilty on a different, properly instructed theory of liability"); *United States v. Skelly*, 442 F.3d 94, 99 (2d Cir. 2006) (no prejudice where the Government's "primary theory of liability" "was supported by overwhelming proof").

The defendant's constructive amendment claim fails for an additional independent reason, which is that he invited the error by proposing jury instructions that included the "scheme to defraud" language for the bank fraud charge. *See* Dkt. No. 162, at 29 (defendant's request to charge, requesting same instruction for bank fraud charge that is contained in Government's request to charge); Dkt. No. 151, at 46 (Government's request to charge including "scheme to defraud" language in bank fraud charge). A defendant may not plead constructive amendment of an Indictment if the defendant himself requested the jury instruction that he claims worked the constructive amendment. *United States v. Bastian*, 770 F.3d 212, 218 (2d Cir. 2014) ("[T]his Court has refused to reverse on the grounds of constructive amendment where, for example, the defendants themselves requested the court to issue instructions amending their indictments … .").

Even if the Court were to overlook the fact that the defendant invited both of the purported jury instruction errors that he asserts in his motion, plain error review would still apply because he failed to object to these errors during trial. And the defendant does not engage with the plain error standard, which he would fail to meet in any event. The complained-of errors would not have affected the jury's verdict on Counts Two and Three, given the overwhelming evidence of the defendant's guilt, and so there is no effect on his substantial rights. Similarly, given the immateriality of these purported errors to the result in this case, they in no way affected the "fairness, integrity or public reputation of judicial proceedings." *Marcus*, 560 U.S. at 262.

**E. Conclusion**

This Court found after the defendant's trial that he was a flight risk and a danger to the community. That conclusion remains undisturbed. Nor has the defendant raised any substantial question of law that could reduce his sentence below the duration of the appeal process or result in reversal. The Court should therefore deny his motion for bail pending appeal.

Very truly yours,

DAMIAN WILLIAMS
United States Attorney

by: ______________________________
Samuel Raymond
Thane Rehn
Cecilia Vogel
Assistant United States Attorneys
(212) 637-6519